The United States Court of Appeals for the Ninth Circuit is now in session. Good morning and welcome, Council, to the Ninth Circuit. Just one matter of housekeeping before we begin with our first case for argument. The matter of Vieira v. County of Sacramento is submitted on the briefs and record. Our first case for argument today is United States v. Halamek. I believe that Ms. Lamereau, you are representing the appellate, so please proceed. Good morning, Your Honors. My name is Kara Lamereau, and I am representing the appellate, Mr. Lawrence Halamek. I intend to spend most of my time this morning discussing the expert testimony issue, but I'd first like to briefly address a couple of quick points with respect to the sentencing issues. First, because the government concedes that this case must be remanded to correct Halamek's illegal sentences in count two, and also concedes that his criminal history score was miscalculated, this court should also vacate his sentences to count one in order that he be resentenced as to both counts with the correct criminal history category. Second, as to the care and custody enhancement issue, this court's recent opinion in Harris is instructive. Harris clarified that the crux of the enhancement turns on whether the minor was entrusted to the defendant and whether the defendant exploited their position as a temporary parent. As in Harris, Halamek was never entrusted with supervisory control over the victim that was comparable to a parent or legal guardian, thus the district court's imposition of a level two enhancement under the care and custody. Counsel, on that issue, is there any legal support for your contention that the custodial enhancement is only proper where the defendant was a custodian of the minor at the time of the offense, or don't we have to look at the entirety of the relationship between the defendant and the victim? We look at the entirety of the relationship between the defendant, but in Harris, this court was... I'm sorry, not in Harris. In Brooks, this court was sure to point out that you have to look at the relationship overall and not just whether or not the victim was in the defendant's custody at the time that the offense occurred. And so it's not merely enough that at the time of the offense, the victim was in the defendant's care. Also, one thing I'd like to point out is that since this case needs to go back for re-sentencing to correct Mr. Halamek's illegal sentence in criminal history category, this court could simply remand for an entirely new re-sentencing on an open record and allow this court to reconsider the care and custody enhancement in light of this court's decision in Harris. With respect, how does Harris change the result in this case? Your client, they called him Uncle something, if I recall. He regularly saw the victim go with other kids over to his house. I mean, this is certainly a quasi-parental role. Would you not agree? I would disagree in this case. First of all, Mr. Halamek only knew the victim for a couple of months. The record indicates that they met sometime in August or September. The offense occurred in December. And so really similar to Harris, there was a short period of time. And also, the victim in Harris lived with the defendant and called him Dad. And even in that case, this court found that the care and custody enhancement should not have applied. So this case is actually factually stronger than Harris. If there's no further questions as to sentencing, I'd like to move on to the expert testimony issue. The district court, in this case, failed to fulfill its gatekeeping obligation when it admitted Ms. Blackwell's grooming testimony without first assessing whether she was qualified to testify on that subject or to determine the reliability of her testimony. Counsel, was there an objection? There was no objection. However... Well, we frequently... Counsel will frequently stipulate to experts' qualifications. And if there's no objection, how can we say it was plain error? Well, this court hasn't expressly determined that the district court must always make a reliability determination on the record even in the lack of an objection. The advisory notes to Rule 702 suggest that the duty to conduct a preliminary assessment exists even in the absence of an objection. And that is triggered by the proffer of expert testimony itself. Because the district court has an independent gatekeeping duty to ensure that expert testimony that's presented to the jury is reliable, its duty is triggered regardless of whether there is an objection. And also, this court has indicated that the district court must make an explicit reliability finding to satisfy its gatekeeping duty and that the failure to do so is an abuse of discretion. So, requiring them to conduct a preliminary assessment even in the absence of an objection is also consistent with that principle. The government incorrectly claims that Daubert only applies to scientific testimony, but Kumotair clarified that the gatekeeping obligation exists regardless if the expert testimony is experience-based or science-based. So, the cases that it relies upon in support of its position are not dispositive because they're also decided before Kumotair. Now, how do you respond to the case Big Head? Why does not that indicate that Karen Blackwell's testimony wasn't subject to Daubert because it wasn't scientific in nature? Well, Big Head was decided before Kumotair, before the U.S. Supreme Court had clarified that Daubert and the district court were required to experience-based testimony of the nature that we had in this case. So, my response to that is it's just simply inapplicable for that specific proposition in light of Kumotair. In light of this court's more recent cases, including Valencia Lopez, which also reiterated that Daubert and Rule 702 apply to scientific-based testimony and also experience-based testimony. In the instant case, Ms. Blackwell is not qualified to testify about the so-called grooming process, though she had extensive experience interviewing vulnerable victims who had either made accusations of abuse or had otherwise been identified as possible victims through related investigations. She had no qualifications to testify about characteristics of offenders and grooming behaviors because she has no experience dealing with sex offenders in either an investigative capacity or a treatment capacity, nor did she explain how her experience interviewing victims supports her claimed expertise with respect to the grooming process. She said that her opinion on grooming was based on FBI studies with their behavioral science unit, but she did not indicate whether she participated in those studies, nor did she provide any sort of explanation as to what those studies found, the methods of those studies. There was simply too great a political gap between her experience as a forensic interviewer and her conclusions as to offender behaviors and characteristics. With respect, I think you make far too fine a distinction there. When I look at Big Head in that case, the expert had conducted approximately 1,300 interviews with victims of child abuse and drew on experiences there. That's almost exactly what happened here. And I understand the timing. That was a 1997 case, but I don't see anything that contradicts Big Head or where the Supreme Court has said it's no longer the law. What am I missing? In Big Head, the testimony that we were dealing with dealt with certain victim disclosures. It dealt with victim characteristics that the expert had gained knowledge about through the expert's experience as an interviewer. And we don't dispute that the expert in this case was qualified to testify in that respect as to delayed disclosures as to facts of that nature, but it's a different expertise to talk about so-called grooming behaviors and the characteristics or behaviors of sex offenders. And it is a different topic of expertise. With respect, when you're talking about child molestation, at least my understanding for 15 years of this work, the very thing that Blackwell talked about, the cuddling, paying special attention to her, treating her in a unique way that developed some reliability, some customization, I just don't see how that's distinct from what happened in Big Head or why it's not relevant in this case. Well, it's certainly, I disagree with respect to it being distinct. However, even if we accept that theoretically some grooming testimony could potentially be reliable, her testimony was not because Ms. Blackwell did not explain how any sort of detailed knowledge, investigatory facts or evidence that she was drawing from. She cited FBI studies generally, but it wasn't clear what her so-called grooming behaviors were based on. She provided no specifics or any data. She used vague and general terms, using phrases like a lot, could be, sometimes. And it just wasn't, there wasn't any estimation as to frequency. She did not say that in most cases we see this or in 80% of cases, she just spoke generally about behaviors that some offenders might use. And the danger with her testimony is that it was used to create an impermissible criminal profile of a child molester. She testified that certain behaviors, many of which aligned with some of the behaviors that Mr. Halimek engaged in, were characteristic of adults who intend to molest children. And then the government used her testimony to link the general profile and behaviors of some abusers, some unknown abusers, in order to prove Halimek's intent in this case. And I would like to reserve time. Okay, you may do so. Very well, we'll hear from the government now. Ms. Durvey, please. Good morning, Your Honor. May it please the court. I'm Karen Duryea, representing the United States here today.  As the court noted, there was a great deal of case law involving forensic interviewers who testify based on their experience of interviewing children who were victims of sexual abuse. And there's a great deal of case law allowing testimony about victimization or the process of victimization or the dynamics of child sexual abuse. That includes not just Big Head, but Nation, Young, Charles, and most recently, Preston, which involved this same expert and very similar testimony. The victimization process includes the process of grooming. In fact, it would be difficult to talk about victim behavior and victim qualities such as compliance or protecting the offender or delayed and piecemeal disclosure. It would be difficult to have any testimony about those that did not include the concept of grooming because grooming is part and parcel of why victims often do not disclose, disclose late, disclose incompletely, and also appear to be compliant in the abuse, all of which are not common sense to the average juror. So I would submit that those cases make it very clear. And as I said most recently, just last year in Preston involving Ms. Blackwell herself, that her testimony was both reliable, helpful to the jury, and certainly relevant. In addition, those same cases and most recently the Lane case from last month made clear that if it was an error for the court not to make an explicit reliability finding even when there was no objection by the appellant, that it was a harmless error that this panel can make that finding on the record that you have before you. And that even if it had been error to admit the testimony, this court could find it harmless, although I submit that it was clearly not error on this record and based on her experience. Counsel, can you clarify for me, is it your position that United States v. Big Head is still good law after Kumho Tire? Well, Your Honor, what I have noticed, I think that there's no question that Kumho requires a gatekeeping function. But what I have not found is a case that indicates that it's an error not to make the finding on the record where there was no objection. Here where there was no objection, in Kumho, in the cases that the appellant cited, there was always an objection. So I would say it is not clear right now whether in the absence of an objection, that's a mistake or an error. But it is clear that even if it were an error, it could be corrected by this court. Another reason why we know that this was not an error that affected substantial rights is the government gave very detailed and specific notice here about what Karen Blackwell was going to testify about. The defendant not only did not object and did not challenge that testimony or her experience, the defendant in the trial actually attempted to use the expert to his advantage. So in the excerpts of record volume 2 at page 216 to 225, the cross-examination by the defense counsel shows that they were accepting her reliability, I would argue, based on trying to use the same expert to make points about false disclosures by teenagers and developmentally delayed children and their susceptibility to coaching, which would have arguably applied to the other act evidence, the victim, ML, who testified about prior sexual abuse. Can you please give me the site again where you say that the defense used Ms. Blackwell's testimony? Yes, ER 2, 216 to 225. Thank you. So instead of challenging the expert or choosing to engage in voir dire or arguing that she was not qualified or trying to limit the extent of the testimony that she gave about the patterns of victimization, the defendant adopted, he made a choice, a tactical decision that he adopted her expertise and tried to use it to his own ends. I also wanted to make clear that the grooming testimony, the testimony that Ms. Blackwell gave, was based on her experience. Not only was it laid out in our expert notice, but she testified that through interviewing almost 4,000 victims of alleged sexual abuse, she talked to them in as much detail as possible about the circumstances leading up to the abuse. That is where she learned about grooming behaviors and offender behavior. She did not focus solely on an FBI study. She talked about what she had learned through her experience. And again, her testimony was not offered to profile child molesters or provide a profile of the defendant so that the government could argue that he met that profile. Her testimony was very clearly offered to explain non-common sense victim behavior, such as compliance, delayed disclosure, and so on. And the delayed disclosure really runs throughout the entire line of cases that we discussed with respect to this issue. I would like to also... The government's position is clearly that there was no plain error with respect to admitting this testimony, and that if there is an error for not finding that reliability on the record, that that's a harmless error this court can and should correct. I'd like to briefly address the care custody enhancement that Judge Smith... I'm sorry, counsel. When you say we can correct it, what do you mean? That we can decide that her testimony should have been admitted? Or that her testimony wasn't expert or scientific and therefore didn't require any Daubert findings? That this panel can correct any error in not having an explicit finding of reliability on the record, just like the court did in Preston and in areas that... Lane most recently, as I said, that the panel can make the finding on the record before it that the testimony was reliable and properly admitted. The care custody and control enhancement, as Judge Smith noticed, again, there was no objection, so the standard is plain error. And the difference between Harris and our case, there are several that are significant. Number one, there was an objection in Harris, so the standard was abuse of discretion. Number two, the defendant there was, in the opinion it states, never even temporarily a caretaker and the mother of the victim specifically did not allow him to be alone with the children. He was never in the place of a parent or a guardian. And that's a significant difference here. Our case is more like Wank, where there was a clear relationship between the victim and the offender and there was also a relationship of trust, which the case law does establish that the analysis here is to look to that relationship, that the violation of trust is a part of why that enhancement is appropriate. Counsel, Ms. Lamoureux made the point that Mr. Hallameck only knew the victim for two months prior to the alleged molestation. What's your comment about that? Is that accurate? And could you describe from the government's perspective, basically what evidence there is that would flesh out the care, custody and control issue? Yes, your honor. First of all, I think the two months was from Harris because in this case, it was from August to December, which I think is six months, certainly at least five. In this case, the defendant was perceived as a relative. She called him Uncle Larry. She went over to his house after school. Most days she spent some nights there on the weekend. The court might have noted that the day before this event happened, she was celebrating the defendant's birthday with him, with other family members, and that that was the day that she trusted him enough to confide in him that she was thinking about running away due to the physical abuse at home. That also tells us how she perceived him. And if that wasn't enough, we have her testimony where she said specifically, I thought, you know, he was part of the family. I can trust him. He's nicer than Marissa. That was her stepmother. He will help me. So that's exactly the kind of relationship that was designed to. Well, that's that's a relationship that that enhancement was designed to address, that betrayal of trust, which is more significant than the abuse, the abuse of trust by a stranger. It's clear in this case that our victim actually turned to him for help and counted on him for help. And he clearly abused that relationship. So the court did not air much less plainly. So in finding that that care custody enhancement applied. And I would say even though the court found it under subsection B, which is otherwise in custody care or supervisory control, it would also apply under the Section A parent relative or legal guardian because of the trust relationship. The application note is clear that it should be construed broadly. And in this case, I would not think that would be a stretch at all. The criminal history category was mentioned briefly. The criminal history category does not. It is not a plain error in front of it because the criminal history category did not affect the sentencing guideline. It couldn't be plain error that would affect substantial rights should not lead to a resentencing, even though there is a resentencing that's appropriate on count to the government's position, is that the conviction should be upheld and that the sentence on count one should also be upheld because there was no plain error. So so you you're requesting that we not instruct the trial court, even though everyone can see we need to send back the issue of sentencing on count to your requesting that we not instruct the trial court to correct the criminal history score calculation. I am with respect to count one. Obviously, if there's a resentencing on count to the court could go ahead and correct the criminal history in that case. But in count one, because there was not a plain error that affected substantial rights, I am arguing that resentencing is not appropriate as to count one. There is no showing that that it affected the court sentence. In addition, the fact that the conduct was listed in the pre-sentence report and known to the judge at the time of the sentence also supports this argument. The criminal history category was based on a paragraph that very clearly laid out that the custodial interference was from the same incident. So that I would say that was clearly the court would have been aware of that. So as I understand the position of the parties, you both agree that we need to remand for resentencing on count to the government does not agree on a resentencing for count one and specifically doesn't want anything changed with respect to the criminal history score calculation on count one. Is that right? It isn't that we don't want anything changed as to the criminal history score. If there is a resentencing, well, as to count two, but yes, your honor, you're correct. That we do not believe that the error as to the criminal history score requires any action based on the record. Can I clarify, counsel? And the reason for that is because if you were to correct the criminal history score for count one, then it would require resentencing for count one and you just don't want count one to be touched. Yes, your honor. Your honor, I believe there's no basis for a remand on count one because the criminal history score did not change the guideline calculations. If the court has no further questions, it looks like my time is almost up. I'll rest on the brief. But did Judge Schroeder, did you have a question? What harm would there be in making sure that the criminal history is accurate? I don't think that there would be harm, but I think that, you know, there's reason to abide by our standards, which is that we don't correct errors that are not plain, that do not affect substantial rights, and that did not affect the outcome of the trial. My colleagues have additional questions for Ms. Duray. Thank you very much for your argument. So you have a little additional time, Ms. Lamarone. I'd like to just jump in on the respect to resentence on count one. The error in calculating his criminal history score did affect his substantial rights because had he been sentenced under the correct criminal history category, he may have received a lesser sentence. For his specific criminal history score under Category 2 and Category 3, the range was 360 to life. With the criminal history Category 3, the district court decided to sentence him to 420 months. Had it realized that his criminal history category was actually Category 2, it might have chose to sentence him closer to the 360 range. And because it would decide to reduce his sentence now that it realizes that his criminal history category was actually lesser, that does affect his substantial rights. And in United States v. Mejia, this court found that an assignment of an extra criminal history point was plain error because the correct calculation could have led to a shorter sentence. That case supports our position here that it does affect his substantial rights. And as Judge Schroeder was pointing out, it's not any more of a burden to see that he's resentenced correctly as to both counts. Doing so ensures that the defendants are sentenced uniformly and also ensures protecting their fundamental rights. I'd also like to briefly go back to and add a couple of... I think the government's position on that is more... I don't think it has to do with this case. The impression I got was they just don't want... they want the rule to be uniform. And so if it doesn't... if it's plain error review, which it sounds like we all agree it is, then... and he wasn't... and he could have got this sentence anyway. I understand the instinct to send it back because we're sending something else back. But wouldn't that be inconsistent, I guess, with how we treat other cases and maybe set bad precedence for this case? It would not be inconsistent because we don't know how... we don't know if this report would have imposed a lesser sentence. It had authority to impose a lesser sentence. And it may have done so had it realized that Mr. Hellermich was actually a Category 2 offender and not a Category 3 offender. It's very possible that the District Court took that criminal history category into consideration in crafting its sentence. Is that the standard that we typically apply on plain error? Is that, you know, if it's possible that the District Court could have granted a lesser sentence, then we send it back? Well, we do have support in MHIA that says that... for instance, this isn't... But even when reducing the criminal history point leads to a sentencing range that encompasses the sentence that they have imposed below, this Court has still sent it back because the Court might have made a different decision had the correct criminal history points been imposed. Yeah, I guess that's... I think that's precisely the government's concern here is that they don't want that rule all the time, right? I don't know that we always do that under plain error review, or do we? This Court has done it recently in Rosales... not this court, I'm sorry. The U.S. Supreme Court in Rosales-Mireles concluded that proof of plain guidelines error that affects the defendant's substantial rights is ordinarily sufficient to show errors seriously affected the fairness, integrity, or public reputation such that remand for resentencing is appropriate. And if there's no further questions, I am out of time. Do either of my colleagues have additional questions of counsel? Hearing none, we thank both counsel for their very helpful argument in this case. The case of United States v. Allamec is submitted.
judges: Schroeder, M. Smith, Vandyke